AARDVARK ART, INC., Plaintiff-Appellant, v. LEHIGH/STECK-WARLICK, INC., Defendant-Appellee.

Second District   No. 2—95—0877

Opinion filed November 7, 1996.

Robert E. Jones and Danielle M. Jaeschke, both of Greene, Jones & Brisske, of Wheaton, and Robert G. Black, of Naperville, for appellant.

Frank J. DeSalvo and Todd M. Cowden, both of Law Offices of Frank J.

DeSalvo, of Wheaton, and Philip G. Kircher, Carl A. Solano, and Nancy Winkelman, all of Schnader, Harrison, Segal & Lewis, of Philadelphia, Pennsylvania, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

This cause was commenced by the filing of a suit by plaintiff, Aardvark Art, Inc., against defendant, Lehigh/Steck-Warlick, Inc., for breach of contract. Following a first trial, the court entered judgment on a jury verdict in favor of plaintiff and against defendant in the sum of $1,695,833. The first trial court submitted only one of plaintiff's several damages claims to the jury, a claim for the diminished value of plaintiff's business. The first trial court directed a verdict against plaintiff on its other damages claim for lost profits. Plaintiff did not appeal the directed verdict on its lost-profits claim. Defendant appealed from the diminished-value damages judgment.

On the first appeal, this court reversed and remanded the cause for a new trial on the issue of damages only, holding that (a) the trial court erred in failing to instruct the jury to disregard the evidence of lost profits in view of the court's directed verdict against plaintiff on its lost-profits claim; and (b) the jury's verdict was tainted by evidence in support of that claim. *Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.*, 212 Ill. App. 3d 492, 495-96 (1991). At the conclusion of the damages trial on remand, defendant offered, and the court allowed over objection, a verdict form allowing the jury to find "against" plaintiff and "for" defendant. The jury returned a verdict of no damages on plaintiff's diminished-value claim. This second appeal follows.

On this second appeal, plaintiff contends: (1) the trial court erred (a) in failing to follow this court's mandate when it improperly gave the jury grounds to return a finding that did not determine damages alone, (b) in precluding plaintiff from introducing lost-profits damages testimony, and (c) in permitting defendant's experts to violate Supreme Court Rule 220 (134 Ill. 2d R. 220) and give opinions at trial beyond the scope of their opinions disclosed before trial; (2) the jury's verdict is contrary to the manifest weight of the evidence; and (3) plaintiff's case was prejudiced by the erroneous admission of irrelevant evidence and by defense counsel's improper conduct. We reverse and we remand with directions.

■ Plaintiff first argues that the trial court erred in failing to follow this court's mandate when it improperly gave the jury an opportunity to return a finding that did not determine damages alone.

"The correctness of the trial court's action on remand is to be determined from the appellate court's mandate, as opposed to the

appellate court opinion. [Citations.] However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant. [Citations.] In construing the language, matters which are implied may be considered embraced by the mandate. [Citation.] The trial court may only do those things directed in the mandate. [Citations.] The trial court has no authority to act beyond the dictates of the mandate. Thus, the controlling question in the appeal from the remand in this case is whether the trial court complied with the mandate." *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308-09 (1981).

■ A new trial dealing solely with the question of damages

"is appropriate where (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict nor that, in some identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability." *Raithel v. Dustcutter, Inc.*, 261 Ill. App. 3d 904, 906-07 (1994).

■ With regard to a contract action, it is well established:

"To meet his burden in a breach of contract action, the plaintiff must establish an offer and acceptance, consideration, definite and certain terms of the contract, plaintiff's performance of all required contractual conditions, the defendant's breach of the terms of the contract, and damages resulting from the breach." *Mannion v. Stallings & Co.*, 204 Ill. App. 3d 179, 186 (1990).

■ With regard to jury instructions:

"In general, the criterion for determining the adequacy of jury instructions is whether, taken as a whole and in series, they fairly, fully, and comprehensively apprised the jury as to applicable legal principles [citation], and a jury instruction should not assume as true any version of disputed facts which the jury should be expected to resolve [citation]." *Pietka v. Chelco Corp.*, 107 Ill. App. 3d 544, 554 (1982).

■ Initially, defendant urges that plaintiff has waived this jury instruction issue. It is arguable that plaintiff did not object to defendant's proposed verdict form at the jury instruction conference. Therefore, plaintiff would be barred from raising any objection here. See, *e.g.*, 155 Ill. 2d R. 366(b)(2)(iii); *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 350 (1980); *Village of Worth v. Hahn*, 206 Ill. App. 3d 987, 991-92 (1990). However, after a careful review of the record, we find that plaintiff did dispute defendant's proposed verdict form by stating, "we don't think they are entitled to a verdict in

favor of Lehigh." Furthermore, with respect to plaintiff's alleged acquiescence to defendant's proposed verdict form, it should be noted that (1) plaintiff's alleged acquiescence occurred only after the trial court ruled, "We'll give it to them"; and (2) plaintiff's alleged acquiescence may have resulted from a fear that had it not acquiesced, it might not have been able to submit its own verdict form. In either case, we determine that this argument was not waived. Therefore, we will address the issue of whether the trial court complied with the mandate.

■ The mandate states that the judgment is reversed and the cause remanded "for a new trial on the issue of damages only." *Aardvark Art*, 212 Ill. App. 3d at 496. By submitting a verdict form which allowed the jury to find "against" plaintiff and "for" defendant, the trial court allowed the jury to address the issue of liability. We recognize that the same result could have been reached without the submission of defendant's verdict form. In other words, using plaintiff's verdict form, the jury could have come back with a damages award of $0. However, this is not the issue. The fact remains that defendant's submitted verdict form went beyond the scope of the mandate by indicating that the previously adjudicated issue of liability was somehow in question. Therefore, we must conclude that the trial court erred when it improperly gave the jury an opportunity to return a verdict that did not determine damages alone.

As a result of the foregoing analysis, we find it unnecessary to reach the issue of whether the jury's verdict was contrary to the manifest weight of the evidence. In fact, our order could end here. However, we will address plaintiff's remaining arguments independent of our earlier determination in an effort to assist the parties on this second remand.

Next, plaintiff contends the trial court erred in precluding plaintiff from introducing lost-profits damages testimony. Specifically, plaintiff argues that (1) since the issue of lost-profits testimony was not decided by the prior appeal taken by defendant, the "law of the case" doctrine is inapplicable; and (2) the trial court further erred in allowing defendant to introduce lost-profits testimony, while precluding plaintiff from doing so.

■ Under the law of the case doctrine:

"[A] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time. [Citations.] The doctrine encompasses a court's explicit decisions, as well as those issues

decided by necessary implication." *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987). It is well established that "[o]n appellate court reversal and remand, a trial court is bound by the appellate court's determination of all questions decided and may act only in conformance with the appellate court's judgment." *Salkeld v. V.R. Business Brokers, Inc.*, 231 Ill. App. 3d 441, 445 (1992). "The law of the case doctrine provides that a question of law decided on a previous appeal is binding on the trial court on remand as well as the appellate court on a subsequent appeal." *Martin v. Federal Life Insurance Co. (Mutual)*, 268 Ill. App. 3d 698, 701 (1994). However, "invoking the law of the case might still not preclude reconsideration of an earlier judge's order if the facts before the court changed or error or injustice were manifest." *People v. Williams*, 138 Ill. 2d 377, 392 (1990).

■ Furthermore, "[t]he doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.' " (Emphasis in original.) *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251 (1984), quoting *People v. Kidd*, 398 Ill. 405, 408 (1947).

"The rule is that no question which was raised or could have been raised in a prior appeal on the merits can be urged on subsequent appeal and those not raised are considered waived." *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 413 (1970). Nevertheless, "findings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee." *Anderson v. Sutter*, 119 Ill. App. 3d 1070, 1077 (1983).

■ The crucial issue in terms of our review is whether the first trial court's directed verdict on plaintiff's lost-profits claim amounted to (1) an evidentiary ruling or (2) a dismissal as a matter of law, and, in effect, an entry of judgment on that claim. We determine that the trial court's directed verdict amounted to an evidentiary ruling and did not become the law of the case. This conclusion is supported by the fact that the trial court's directed verdict went to the sufficiency of the evidence. Specifically, the trial court ruled that "plaintiff has failed to isolate the basis for lost profits through the sole evidence of its chief executive officer and I rule that it's not sufficient." It cannot be inferred from this ruling that no competent witness or evidence is available to establish the basis for a lost-profits claim.

In addition, the appellate court chose to reverse and remand "for a new trial on the issue of damages only." *Aardvark Art*, 212 Ill.

App. 3d at 496. It is without question that lost profits can be considered as part of a damages award. Had the appellate court wished to preclude lost-profits testimony from consideration on remand, it could have easily done so. Nevertheless, the mandate gave no such restriction on damages testimony during retrial.

Since we have determined that the trial court's directed verdict was an evidentiary ruling, it follows that plaintiff was not obligated to cross-appeal this issue in order to preserve it for review. Therefore, we determine that the trial court erred in precluding plaintiff from introducing lost-profits damages testimony. We also determine it was fundamentally unfair that defendant's experts were allowed to give opinions as to lost profits whereas plaintiff was not allowed to place lost-profits issues in contention. We conclude that plaintiff was substantially prejudiced and the outcome of the trial was affected by the trial court's ruling precluding plaintiff from introducing lost-profits damages testimony. As a result, plaintiff is entitled to a reversal. *Cairns v. Hansen*, 170 Ill. App. 3d 505, 511 (1988).

Next, plaintiff argues that the trial court erred in permitting defendant's experts to violate Supreme Court Rule 220 and give opinions at trial beyond the scope of their opinions disclosed before trial. Plaintiff argues the purpose behind Rule 220 was frustrated and the rule itself was violated when (1) one of defendant's expert witnesses, Frank Bernatowicz, gave testimony on the separate diminution of value element of damages when his disclosed opinions before trial all went solely to lost profits; (2) Bernatowicz offered two widely different damages figures before trial, then testified at trial completely inconsistently with those two opinions by stating he believed plaintiff did not suffer any damages; (3) Jane Donovan was allowed to give expert opinions for defendant when she had never been disclosed as an expert prior to trial; and (4) defendant's additional expert (Carr) based his opinions on information contained in plaintiff's 1987 Small Business Administration (SBA) loan documentation when the basis for that opinion had not been disclosed before trial.

Supreme Court Rule 220 states, in relevant part:

"(d) Scope of Testimony. To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings." 134 Ill. 2d R. 220(d) (repealed eff. January 1, 1996).

Furthermore:

" 'The purpose of the rule is to facilitate trial preparation by eliminating last-minute disclosure of expert witnesses. [Citations.] The rule was designed to eliminate this evil by establishing a uniform, but not inflexible, framework regarding the timely revelation of the identity of expert witnesses and the subject matter of their testimony. [Citations.] The rule requires that parties act in good faith to ascertain the identity of expert witnesses they reasonably anticipate using.' " *Wehde v. Regional Transportation Authority*, 237 Ill. App. 3d 664, 685 (1992), quoting *Vallejo v. Mercado*, 220 Ill. App. 3d 1, 7-8 (1991).

■ Occurrence witnesses testify "not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." *Tzystuck v. Chicago Transit Authority*, 124 Ill. 2d 226, 234-35 (1988). Finally, it should be remembered that it is within the jury's discretion to resolve conflicts in the evidence and to make findings regarding the credibility of the witnesses and the weight to be given to their testimony. See *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992).

■ A review of the evidence reveals the interconnected nature between lost profits and a diminished value claim. Therefore, it should reasonably be expected that any testimony regarding one may necessarily involve the discussion of the other. Furthermore, resolving inconsistencies in Bernatowicz's testimony was within the province of the jury. With respect to Donovan and Carr, we determine that the trial court did not err in admitting their testimony. After a careful review of the record and the case law, we determine that the trial court did not err, nor did it abuse its discretion when it allowed defendant's expert testimony. Even assuming the trial court erred, we determine that such error would be harmless.

Last, plaintiff argues that its case was prejudiced by the erroneous admission of irrelevant evidence and by defense counsel's improper conduct. Plaintiff contends (1) the trial court improperly allowed defendant to cross-examine plaintiff's president and chief executive officer (McGlothlin) regarding his application for an SBA loan in 1987; (2) despite a court order prohibiting witnesses from remaining in the courtroom to hear testimony during trial, defendant nevertheless supplied its own witnesses with transcripts of the continuing trial testimony before they gave their testimony; (3) defense counsel improperly spoke with one of plaintiff's witnesses about her testimony in the hallway outside the courtroom; and (4) the trial court erred in failing to grant plaintiff's ninth motion *in limine* to exclude evidence

that plaintiff failed to mitigate damages and in denying plaintiff's motion for a directed verdict on the issue of mitigation.

■ "The objective of the reviewing court is not to determine whether the record is totally free of error but whether any error occurred which substantially prejudiced a party and affected the outcome below." *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 956 (1991). "A new trial is necessary when the cumulative effect of trial errors so deprives a party of a fair trial that the verdict might have been affected." *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 184 (1994). "[E]ven if evidence is relevant it may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice; it is a matter for the sound discretion of the trial court." *Tellone v. North Shore Dodge, Inc.*, 271 Ill. App. 3d 885, 888 (1995).

■ We determine that it was reasonable for the trial court to allow defense counsel to cross-examine McGlothlin regarding his SBA loan application in order to impeach his testimony that defendant's breach in essence destroyed plaintiff's company. With regard to defense counsel supplying defendant's own witnesses with transcripts of trial testimony before giving their testimony, there is evidence in the record that McGlothlin's new diminished-value damages figure was not disclosed to defense counsel until McGlothlin's testimony at the second trial. As a result, it was not unreasonable for defense counsel to make defendant's expert witnesses aware of this new information at trial. It might have been prudent, however, to request relief from the trial court before engaging in the conduct.

Furthermore, the record does not lend itself to the conclusion that defense counsel's conversation with one of plaintiff's witnesses (Bouchard) was improper in the respect that it affected her testimony or that it substantially prejudiced plaintiff. Finally, with regard to the issue of mitigation, we determine that there was sufficient evidence to create a triable issue for the jury. Therefore, the trial court did not abuse its discretion when it denied plaintiff's motion for a directed verdict on the issue of mitigation and when it failed to grant plaintiff's motion *in limine* to exclude evidence that plaintiff failed to mitigate damages. When viewing the record as a whole, we conclude that any error which may have occurred did not substantially prejudice plaintiff or affect the outcome below.

The history and complexity of this matter mandate additional direction concerning the jury instructions. A concise, compact instruction might read as follows:

> The issue of liability having already been adjudicated, we, the jury, find for AARDVARK and against LEHIGH in the amount of $_____.

However, this court's first mandate might better be served by a more expansive and defining instruction, such as:

The issue of liability has already been adjudicated in favor of AARDVARK. Whether any elements of damages have been proved is for you to determine. You must fix the amount of money, if any, which reasonably and fairly compensates AARDVARK for any of the following elements of damages proved by the evidence to have resulted from the breach of contract by LEHIGH:

1. The value of earnings and profits lost and present cash value of earnings and profits reasonably certain to be lost in the future in the amount of $_____; and

2. The difference between the fair market value immediately before the occurrence and its fair market value after the occurrence in the amount of $_____.

We, the jury, find for AARDVARK and against LEHIGH in the total amount of $_____.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County, and we remand the cause for a new trial with instructions consistent with this opinion.

Reversed and remanded with directions.

McLAREN, P.J., and GEIGER, J., concur.